# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN DOE, | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:18-cv-106 |
| | § | |
| Albert T. Munoz | § | JURY DEMANDED |
| C. Obryant | § | |
| Terrence Bullard | § | |
| Myron Riser | | |
| Francis McIntyre | | |
| Cody Hickman | | |
| M. Watkins | | |
| (in their individual capacities), and | | |
| HARRIS COUNTY, TEXAS, | | |
| *Defendants.* | | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT SITTING IN  THE SOUTHERN DISTRICT OF TEXAS:

Plaintiff JOHN DOE (hereinafter "Plaintiff") respectfully comes before this Honorable Court complaining pursuant to: 42 U.S.C. § 1983 that Defendants herein acted under color of state law and deprived him of his clearly established constitutional: (a) right to be free from wrongful arrests, (b) right to be protected from inmate assault, (c) right to receive adequate medical care as a condition-of-confinement, and (d) right to be free from excessive force; 42 U.S.C. § 12131 for violations of the Americans with Disabilities Act; and 29 U.S.C. § 794(a) & 29 U.S.C. § 701 (§ 504 of the Rehabilitation Act) for discriminating against individuals with disabilities. In support thereof, Plaintiff specifically alleges the following:

## I.     SUMMARY

1. John Doe suffers from epilepsy, a disability.

2. Despite his stable condition at the time, Mr. Hill suffered from a seizure while driving and caused multiple accidents.

3. Harris County Sheriff's Office deputies arrived on scene, failed to consider Mr. Doe's condition, and arrested him.

4. When Mr. Doe was admitted into the Harris County Jail, it was indicated that he had a mental health disability.

5. The Harris County Sheriff's Office deputies that oversaw Mr. Doe's admittance into jail wrongfully classified him, and sent him to a maximum security holding cell block.

6. Harris County Sheriff's Office deputies at this block failed to protect Mr. Doe, resulting in multiple inmates assaulting Mr. Doe.

7. One inmate even sexually assaulted Mr. Doe.

8. When escorting Mr. Doe out of this cell block, after allowing the assaults to occur, another Harris County Sheriff's Office deputy assaulted Mr. Doe again.

9. No deputy involved allowed Mr. Doe to receive timely medical care from the assaults and his now exasperated epileptic condition.

10. The lack of proper response, classification, admittance, and care of the mentally disabled by the Harris County Sheriff's Office caused Mr. Doe's condition to deteriorate significantly.

## II.   NATURE OF THE ACTION

11. This suit arises under the Constitution of the United States (particularly the Fourth, Fifth and Fourteenth Amendments), 42 U.S.C. § 1983, 42 U.S.C. § 12131, 29 U.S.C. § 794(a) & 29 U.S.C. § 701 (§ 504 of the Rehabilitation Act).

## III.   DEMAND FOR JURY TRIAL

12. Plaintiff respectfully demands a trial by jury.

## IV.   PARTIES

13. Plaintiff John Doe is and was at all time relevant hereto a resident of Harris County, Texas.

14. Defendant Harris County, is being sued and may be served through County Judge Ed Emmett at 1001 Preston, Suite 911, Houston, Texas 77002.

15. Defendants Albert T. Munoz, C. Obryant, Terrence Bullard, Myron Riser, Francis McIntyre, Cody Hickman, and M. Watkins, deputies or employees with the Harris County Sheriff's Office, are being sued in their individual capacity and may be served at their place of work at 1200 Baker Street, Houston, Texas 77002.

## V.   JURISDICTION AND VENUE

16. This Court has jurisdiction to hear the merits of Plaintiff's claims under 28 U.S.C. §§ 1331 and 1343(a) (3) and (4) because Plaintiff's suit arises under 42 U.S.C. § 1983, 2 U.S.C. § 12131, 29 U.S.C. § 794(a) & 29 U.S.C. § 701 (§ 504 of the Rehabilitation Act).

17. Venue is proper under 28 U.S.C. § 1391(b) because all or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Southern District of Texas, Houston Division.

18. All conditions precedent have been performed or have occurred.

## VI. **SPECIFIC FACTS**

19. Prior to the events giving rise to this suit, John Doe suffered from a condition causing seizures for most of his life.

20. His condition was relatively stable, and he was medically able to drive.

**Initial Accidents**

21. Mr. Doe suffers from epilepsy.

22. On January 14, 2016, Mr. Doe was driving and suffered from an epileptic episode resulting in multiple car wrecks.

23. Harris County Sheriff's Office deputies awoke Mr. Doe in his vehicle.

24. Mr. Doe informed the officer of his disability.

25. Mr. Doe's epileptic condition substantially limits major life activities.

26. Mr. Doe's epileptic condition substantially limits his ability to care for himself, eat, sleep, speak, learn, read, concentrate, think, communicate, interact with others, work, and consortium activities.

27. The arresting officer awoke Mr. Doe in his car and slammed Mr. Doe against his car, immediately after being informed that Mr. Doe suffered from a seizure.

28. Harris County Sheriff's Office Deputy C. Obryant was named in an offense report as the detaining officer.

29. Harris County Sheriff's Office Deputy Terrence Bullard was named in an offense report as an on-scene officer giving significant opinions about the decision to arrest Mr. Doe.

30. Harris County Sheriff's Office Deputy Albert T. Munoz arrived on scene of the second accident and wrote the offense report giving rise to Mr. Doe's criminal charge.

31. Harris County Sheriff's Office Deputy Albert T. Munoz was informed of Mr. Doe's disability.

32. Harris County Sheriff's Office Deputies C. Obryant and Terrence Bullard:

    a. were officers who found Mr. Doe; and

    b. were officers who were informed of Mr. Doe's disability by Mr. Doe himself.

33. Harris County Sheriff's Office Deputies C. Obryant, Terrence Bullard, and Albert T. Munoz:

    a. should have taken Mr. Doe's disability into account when assessing whether a crime was committed;

    b. was deliberately indifferent to Mr. Doe's disability, resulting in his arrest, and ultimately, his injuries;

    c. discriminated against Mr. Doe because of his disability, resulting in his arrest, and ultimately, his injuries; and,

    d. had Mr. Doe arrested for Failure to Stop and Render Aid despite being made aware of Mr. Doe's disability.

34. The criminal charge against Mr. Doe due to this incident was later dismissed.

**Custody Evaluation Forms**

35. When Mr. Doe was booked into the Harris County Jail, Initial Assessment and Custody Classification paperwork were filled out.

36. The Initial Assessment and Custody Classification paperwork appears to be signed by Detention Officer Myron Riser.

37. On the form entitled "PREA Victimization Vulnerable & Potential Predator Screening Form," number 4 on the Victimization Vulnerability Checklist was circled "YES" for "Physical, developmental or mental health history."

38. On the form entitled "PREA Victimization Vulnerable & Potential Predator Screening Form," Detention Officer Myron Riser, or the individual filling out the Custody Evaluation forms, failed to circle either "General Population" or "Other non-Victimization Vulnerable housing" to designate whether Mr. Doe should be given a vulnerable inmate classification and custody designation.

39. If Mr. Doe had been given a vulnerable inmate classification and custody designation, he would not have been placed in "Highest" security custody, resulting in an assault against him (see below for assault facts).

40. On the "Inmate Needs Assessment" form, Detention Officer Myron Riser, or the individual filling out the Custody Evaluation forms, indicated in section A, "Health," a code of "2: Mild Disability or Illness; Outpatient Treatment Required: Non-Strenuous Work," and wrote in the comments section, "seizures."

41. After acknowledging Mr. Doe's disability of suffering from seizures in the Health section on the Custody Evaluation forms, Harris County and Detention Officer Myron Riser, or the individual filling out the Custody Evaluation forms, failed to take this disability into account when placing him in a specific custody cell block.

42. On the "Inmate Needs Assessment" form, Detention Officer Myron Riser, or the individual filling out the Custody Evaluation forms, indicated in section D, "Vocational," an unclear code, writing both 2 and 3 over one another.

43. A code of 2 under "Vocational" is "Limited Skills; Ability to Hold Semi-Skilled Position; Needs Training."

44. A code of 3 under "Vocational" is "Possess Marketable Skill or Trade."

45. Under comments under "Vocational," Detention Officer Myron Riser, or the individual filling out the Custody Evaluation forms, wrote "Disable."

46. Detention Officer Myron Riser, or the individual filling out the Custody Evaluation forms:

    a. failed to properly fill out this section of the form; and

    b. recognized Mr. Doe's disability when filling out these forms.

47. Harris County and Detention Officer Myron Riser, or the individual filling out the Custody Evaluation forms, failed to take this disability into account when placing Mr. Doe into his cell block of custody.

48. If Harris County and Detention Officer Myron Riser, or the individual filling out the Custody Evaluation forms, had adequately filled out the form, acknowledged, and/or taken into account the seizures and disability, Mr. Doe would have been properly assigned to "Medium Custody," received reasonable accommodations of medical care and housed with other "Medium Custody" inmates, and not have suffered injury.

49. Harris County and Detention Officer Myron Riser, or the individual filling out the Custody Evaluation forms:

    a. were deliberately indifferent to Mr. Doe's correct classification, thereby causing his injuries; and

    b.  failed to take Mr. Doe's disability into account when placing him in a specific cell block of custody after acknowledging this disability in the Vocational section on the Custody Evaluation forms.

50. The Initial Assessment and Custody Classification paperwork included a "Custody Evaluation" section.

51. In the "Custody Evaluation" section:

    a.  the Severity of Current Offense was marked for 7 points, or "Highest;"

        i.  According to the Texas Commission on Jail Standards "Severity of Offense Scale," the Severity of the offense for which Mr. Doe was placed into custody is "High."

        ii.  A "High" severity of offense classification is given 5 points on Harris County Sheriff's Office Initial Custody Assessment Scale.

        iii.  The person filling out the Custody Evaluation wrongly input a classification of "Highest," giving 7 points towards more serious custody classification.

        iv.  The signature of Assessment Staff Member looks like Detention Officer Myron Riser signed and filled out the Custody Evaluation.

    b.  the Serious Offense History was marked for 4 points, or "High;" and,

    c.  the Stability Factors was marked for -1 points for "Age Twenty-six (26) or older."

52. The scores for Severity of Current Offense, Serious Offense History, and Stability Factors were added together to give Mr. Doe a "Comprehensive Custody Score."

53. If the scores for Severity of Current Offense, Serious Offense History, and Stability Factors were added correctly as indicated on the form, it would have given Mr. Doe a "Comprehensive Custody Score" of 10.

54. A "Comprehensive Custody Score" of 10 places an individual in "Medium Custody," according to the Custody Classification Chart.

55. Instead, the person filling out the Custody Evaluation wrote a score of "11" in the Comprehensive Custody Score.

56. A Comprehensive Custody Score of 11 is the lowest possible score requiring an inmate to be placed in "Maximum Custody."

57. If the Comprehensive Custody Score is 10 points, Mr. Doe would have been given a "Medium Custody" classification.

58. Detention Officer Myron Riser, or the individual filling out the Custody Evaluation forms:

   a. was not able to add numbers correctly to 10;

   b. deliberately miscalculated the Comprehensive Custody Score to equal 11;

   c. intentionally filled out the paperwork wrong to cause Mr. Doe to be placed in "Maximum Custody;" and/or,

   d. was at least deliberately indifferent to adding numbers to 10.

59. If the Custody Evaluation was filled out correctly, Mr. Doe would have been given a Comprehensive Custody Score of 8 points, giving him a "Medium Custody" classification.

60. Detention Officer Myron Riser, or the individual filling out the Custody Evaluation forms, was at least deliberately indifferent to filling out the Custody Evaluation forms correctly.

61. Due to his wrongful classification, Mr. Doe was placed in "Maximum Custody."

62. While in "Maximum Custody," Mr. Doe was assaulted by other inmates, also given "Maximum Custody" classifications.

63. If Detention Officer Myron Riser, or the individual filling out the Custody Evaluation forms, had filled the form out correctly, Mr. Doe would not have been subjected to the assault committed against him.

64. The form classifying Mr. Doe's custody level has no signature of a supervisor.

65. If a supervisor had adequately reviewed the Custody Evaluation, Mr. Doe would not have been placed in "Maximum Custody" and been assaulted.

66. The blatant mistakes made filling out the form indicate that the wrongful classification of Mr. Doe was intentional.

67. Harris County Sheriff's Office failed to train its detention officers to correctly fill out Custody Evaluation forms.

68. The Custody Evaluation Forms, when filled out correctly:

   a. determine where a human body will be placed while under care of the Harris County Sheriff's Office;

   b. are vital to ensure the livelihood of the humans inside the Harris County Jail;

   c. exist entirely to prevent such horrific incidents as in this case; and,

   d. prevent inmate assaults, rapes, and resulting injuries.

69. The Custody Evaluation Forms, when filled out incorrectly:

   a. can be used as a form of abuse by those prescribed with the care of inmates;

      b.  wrongfully places vulnerable citizens into the darkest and most infested corners of the snake pit that is the Harris County Jail;

      c.  treats legally innocent pre-trial detainees, human beings, and fellow citizens with less respect than the animals in our city's shelters; and,

      d.  causes inmate assaults, rapes, and resulting injuries.

70. Harris County failed to have a supervisor adequately review the Custody Evaluation.

71. The wrongful Custody Evaluation and classification directly caused Mr. Doe's injuries.

### Jail Beating and Sexual Assault of John Doe

72. On January 15, 2016, Harris County Sheriff's Office Detention Officer Cody Hickman was assigned to the pod in which Mr. Doe was placed.

73. Harris County Sheriff's Office Detention Officer Cody Hickman knowingly failed to keep adequate watch of the inmates.

74. A blind spot existed from Harris County Sheriff's Office Detention Officer Cody Hickman's vantage point inside the pod control center.

75. Harris County Sheriff's Office Detention Officer Cody Hickman allowed other inmates to take Mr. Doe into the blind spot from his pod control center's vantage point.

76. Harris County Sheriff's Office Detention Officer Cody Hickman allowed about a dozen other inmates to assault Mr. Doe.

77. One inmate, known as "T," sexually assaulted Mr. Doe.

78. "T" was known to have sexually assaulted other inmates.

79. As the assaults were ending, another inmate verbally indicated that the sexual assault by "T" had resulted in causing feces to get on Mr. Doe.

80. Due to the sexual assault, Mr. Doe defecated himself.

81. Harris County Sheriff's Office Detention Officers did not act quickly enough to prevent the sexual assault of Mr. Doe.

82. Harris County Sheriff's Office Detention Officers were deliberately indifferent towards Mr. Doe, resulting in his assaults.

83. Harris County Sheriff's Office Detention Officer Cody Hickman:

      a.  allowed Mr. Doe to be sexually assaulted by an inmate known to have sexually assaulted other inmates;

      b.  failed to protect Mr. Doe from being assaulted by the other inmates.

    c.   failed to protect Mr. Doe from being sexually assaulted by an inmate known to have sexually assaulted other inmates;

    d.   allowed other inmates to kick Mr. Doe in the head, punch him, and bite him in his left hand;

    e.   allowed Mr. Doe to be sodomized by an inmate known to have sexually assaulted other inmates;

    f.   refused to allow Mr. Doe to escape his assailants;

    g.   refused to timely call for help for Mr. Doe;

    h.   along with the other involved detention officers, refused to adequately investigate the assaults;

    i.   was deliberately indifferent to protecting Mr. Doe from the assaults;

    j.   discriminated against Mr. Doe because of his disability by allowing him to be beaten by other inmates; and

    k.   discriminated against Mr. Doe because of his disability by allowing him to be sexually assaulted by an inmate known to have sexually assaulted other inmates.

84. Even after the assaults began, Mr. Doe tried to escape his assailants.

85. As a result of this assault, Mr. Doe suffered another seizure.

86. When Harris County Sheriff's Office Detention Officer Cody Hickman filled out an offense report regarding this incident, he listed Mr. Doe as the "Inmate Charged."

87. Listing Mr. Doe as the "Inmate Charged" caused a likely scenario of other detention officers confusing Mr. Doe as the assailant, when he was, in fact, the victim of the assaults.

88. When Harris County Sheriff's Office Detention Officer Cody Hickman filled out an offense report regarding this incident, he indicated that he did not offer medical services to Mr. Doe.

89. When Harris County Sheriff's Office Detention Officer Cody Hickman filled out an offense report regarding this incident, he indicated that:

    a.   Mr. Doe was not taken to the hospital;

    b.   he did not refer Mr. Doe for mental health care;

    c.   no other persons were involved; and

    d.   he took no statements regarding the assault.

90. Mr. Doe was not taken to medical or the infirmary immediately after the assaults.

91. Harris County Sheriff's Office Detention Officer Cody Hickman actions and failures to act caused Mr. Doe's injuries.

92. Harris County Sheriff's Office Detention Officer M. Watkins:

   a. is listed on the offense report for this incident as the "Approving Supervisor;"

   b. refused to require adequate investigation regarding this incident;

   c. refused to prevent Mr. Doe from being listed as an "Inmate Charged;" and

   d. refused to protect Mr. Doe from being assaulted.

**<u>Subsequent Assault and Mistreatment by Detention Officer Francis McIntyre</u>**

93. After the original assault, Harris County Sheriff's Office Detention Officer Francis McIntyre:

   a. escorted Mr. Doe out of the cell block;

   b. stated to Mr. Doe, "T got you, huh?"

   c. was referring to "T," an inmate known by Harris County Sheriff's Office Detention Officers' to have sexually assaulted other inmates under their care; and

   d. escorted Mr. Doe to the elevator.

94. Mr. Doe suffered from another seizure in the elevator.

95. The trauma and stress caused by the assault resulted in Mr. Doe suffering another seizure.

96. When Mr. Doe experienced this seizure, he had to lean forward to catch himself.

97. When Mr. Doe leaned forward, the only thing he could catch himself on was Harris County Sheriff's Office Detention Officer Francis McIntyre standing in front of him.

98. Mr. Doe attempted to lightly and cautiously touch Harris County Sheriff's Office Detention Officer Francis McIntyre to catch himself and make the officer aware he was suffering from another seizure.

99. Mr. Doe's legs were giving out while in the elevator with Harris County Sheriff's Office Detention Officer Francis McIntyre.

100. When Mr. Doe leaned toward Harris County Sheriff's Office Detention Officer Francis McIntyre for help, Officer Francis McIntyre:

   a. purposely moved, causing Mr. Doe to fall against the wall and floor of the elevator;

   b. then assaulted Mr. Doe;

   c. grabbed Mr. Doe around his neck, causing further injury;

   d. placed a forearm into Mr. Doe's throat, causing further injury;

    e.   slammed Mr. Doe against the wall of the elevator, causing further injury; and

    f.   told Mr. Doe to "never put your fucking hands on me again."

101. Harris County Sheriff's Office Detention Officers directed Mr. Doe to the shower due to blood and feces still being on Mr. Doe's person.

102. In the shower, Mr. Doe:

    a.   noticed his underwear was filled with blood and feces;

    b.   experienced extreme discomfort, causing burning and bleeding, because of the injuries from the assaults, sexual and otherwise;

    c.   screamed for help and assistance; and

    d.   was left there for about an hour.

103. Harris County Sheriff's Office Detention Officers knew or should have known that Mr. Doe was suffering injuries from the assaults committed against him.

104. Immediately after the shower, Mr. Doe:

    a.   was not taken to medical or the infirmary; and

    b.   was given new boxer briefs.

105. This provision of new underwear evinced that the detention officers knew or should have known of Mr. Doe's injuries, yet did nothing about it except leave Mr. Doe in the shower and provide new underwear.

106. Mr. Doe was taken to another holding cell after the shower.

107. Mr. Doe suffered six more seizures while in the holding cell, and informed detention officers of his suffering.

108. Harris County Sheriff's Office Detention Officer Francis McIntyre:

    a.   knew or should have known that Mr. Doe had a disability and suffered from seizures;

    b.   failed to take Mr. Doe's disability into account when handling and overseeing him;

    c.   unnecessarily and excessively used force while responding to Mr. Doe's polite suffering;

    d.   took Mr. Doe to another holding cell, without regard for his disability;

    e.   discriminated against Mr. Doe because of his disability;

    f.   then wrote an offense report alleging Mr. Doe violated the Inmate Handbook; and

g.   indicated in the offense report for this incident that he did not offer medical services to Mr. Doe.

109. Mr. Doe filed a complaint against Harris County Sheriff's Office for all of the above incidents, yet Mr. Doe has received no notice of any action taken by Harris County Sheriff's Office.

**Injuries**

110. Mr. Doe's epilepsy condition was exasperated because of his mistreatment by Harris County Sheriff's Office Deputies.

111. Because of his mistreatment by Harris County Sheriff's Office Deputies, Mr. Doe suffered and suffers from:

a.   neurological damage;

b.   severe injuries to his left eye and left hand;

c.   back, neck, and shoulder pain;

d.   breathing difficulties;

e.   residual conjunctival eye redness;

f.   residual cognitive dysfunction;

g.   physical injuries from a human bite on his left hand;

h.   migraines;

i.   hurting teeth;

j.   skin irritation, burning, and itching;

k.   intolerance to light and noise;

l.   diarrhea;

m.   hemorrhoids;

n.   muscle and joint pains; and

o.   cold intolerance.

## VII.   CAUSES OF ACTION

### COUNT 1 – 42 U.S.C. § 1983

**Albert T. Munoz, C. Obryant, and Terrence Bullard violated Plaintiff's constitutional right to be free from wrongful arrests.**

112. The foregoing paragraphs are incorporated herein as if quoted verbatim.

113. On or about January 14, 2016, Plaintiff's constitutional right to be free from wrongful arrests by a peace officer acting under color of state law was:

    a.  secured to him by the Fourth Amendment of the United States Constitution;

    b.  clearly established within the Southern District of Texas; and

    c.  violated by Albert T. Munoz, C. Obryant, and Terrence Bullard.

114. Any and all objectively reasonable peace officers would know that:

    a.  Plaintiff was plagued by a significant disability;

    b.  Plaintiff was suffering from seizures;

    c.  Plaintiff's disability should be taken into account when assessing whether a crime was committed;

    d.  Plaintiff's disability was the cause of the accidents; and

    e.  Plaintiff should not have been arrested for Failure to Stop and Render Aid.

115. Any reasonable peace officer acting under clearly established law in the Southern District of Texas and confronting the same or similar facts would know:

    a.  the Fourth Amendment to the United States Constitution prohibits the detention of a person in the absence of probable cause;

    b.  said prohibition is clearly established within the Southern District of Texas;

    c.  Plaintiff had not committed any crime to justify Albert T. Munoz's, C. Obryant's, and Terrence Bullard's arrest of Plaintiff;

    d.  there was no probable cause to believe Plaintiff had committed any crime;

    e.  the circumstances herein did not generate any objectively reasonable indicia of criminal activity; and

    f.  there was no objective justification behind Albert T. Munoz's, C. Obryant's, and Terrence Bullard's arrest of Plaintiff.

116. Albert T. Munoz's, C. Obryant's, and Terrence Bullard's arrest of Plaintiff:

    a.  was plainly incompetent;

    b.  knowingly violated the law;

    c.  intentionally violated the law;

    d.  was the product of unreasonably mistaken beliefs;

    e.  was objectively unreasonable in light of clearly established law;

    f.  was deliberately indifferent to Plaintiff and his rights;

g.  evidences an unreasonable misunderstanding of his powers and responsibilities; and

h.  was the moving force behind the deprivation of Plaintiff's civil rights.

117. Plaintiff seeks punitive damages against Albert T. Munoz, C. Obryant, and Terrence Bullard because they:

a.  knew at the time that the arrest of Plaintiff was without probable cause;

b.  acted with conscious and deliberate indifference to the possibility that Plaintiff would suffer egregious harm from his wrongful arrest;

c.  acted with reckless and/or callous indifference to Plaintiff's federally protected rights;

d.  recklessly trampled on Plaintiff's rights through plainly unlawful conduct; and/or

e.  was grossly negligent in his investigation of or reliance on the facts presented herein.

## COUNT 2 – 42 U.S.C. § 1983

### Myron Riser violated Plaintiff's constitutional right to be protected from inmate assault.

118. The foregoing paragraphs are incorporated herein as if quoted verbatim.

119. On or about January 14-16, 2016, Plaintiff's constitutional right to be protected from inmate assault by a peace officer acting under color of state law was:

a.  secured to him by the Due Process Clause of the Fourteenth Amendment of the United States;

b.  clearly established within the Southern District of Texas; and

c.  violated by Myron Riser.

120. Myron Riser refused to protect Plaintiff from inmate assault by:

a.  refusing to circle either "General Population" or "Other non-Victimization Vulnerable housing" to designate whether Plaintiff should be given a vulnerable inmate classification and custody designation;

b.  causing Plaintiff to be improperly placed in "Highest" security custody, resulting in an assault against him;

c.  refusing to take Plaintiff's known disability into account when placing him in a specific cell block of custody;

    d.   refusing to properly complete the "Vocational" section of the "Inmate Needs Assessment" form;

    e.   refusing to allow the noted "Disable" condition of Plaintiff be taken into account when classifying Plaintiff to a custody level;

    f.   refusing to properly complete the "Severity of Current Offense" question of the "Custody Evaluation" section within the Initial Assessment and Custody Classification paperwork;

    g.   refusing to properly add the "Custody Evaluation" section factors together, resulting in an incorrect "Comprehensive Custody Score" that placed Plaintiff in "Maximum Custody;" and

    h.   refusing to respond to Plaintiff's particular threat and danger.

121. Myron Riser's refusals resulted in assaults against Plaintiff.

122. Myron Riser refused to respond to Plaintiff's particular threat and/or danger by:

    a.   refusing to circle either "General Population" or "Other non-Victimization Vulnerable housing" to designate whether Plaintiff should be given a vulnerable inmate classification and custody designation;

    b.   causing Plaintiff to be improperly placed in "Highest" security custody, resulting in an assault against him;

    c.   refusing to take Plaintiff's known disability into account when placing him in a specific cell block of custody;

    d.   refusing to properly complete the "Vocational" section of the "Inmate Needs Assessment" form;

    e.   refusing to allow the noted "Disable" condition of Plaintiff be taken into account when classifying Plaintiff to a custody level;

    f.   refusing to properly complete the "Severity of Current Offense" question of the "Custody Evaluation" section within the Initial Assessment an Custody Classification paperwork;

    g.   refusing to properly add the "Custody Evaluation" section factors together, resulting in an incorrect "Comprehensive Custody Score" that placed Plaintiff in "Maximum Custody" resulting in an assault against Plaintiff;

    h.   causing Plaintiff to be placed in a known dangerous cell block of custody;

    i.   causing Plaintiff to be placed in an area with inmates known to assault other inmates;

    j.   causing Plaintiff to be placed in an area with an inmate known to sexually assault other inmates;

    k.  refusing to supervise Plaintiff;

    l.   refusing to recognize the threat; and

    m. refusing to protect Plaintiff from the threat.

123. Myron Riser was deliberately indifferent to the assault and threat of assault to Plaintiff.

124. Myron Riser abused his discretion by failing to exercise sound, reasonable, and legal decision-making skills when:

    a.  refusing to circle either "General Population" or "Other non-Victimization Vulnerable housing" to designate whether Plaintiff should be given a vulnerable inmate classification and custody designation;

    b.  causing Plaintiff to be improperly placed in "Highest" security custody, resulting in an assault against him;

    c.  refusing to take Plaintiff's known disability into account when placing him in a specific cell block of custody;

    d.  refusing to properly complete the "Vocational" section of the "Inmate Needs Assessment" form;

    e.  refusing to allow the noted "Disable" condition of Plaintiff be taken into account when classifying Plaintiff to a custody level;

    f.   refusing to properly complete the "Severity of Current Offense" question of the "Custody Evaluation" section within the Initial Assessment and Custody Classification paperwork; and

    g.  refusing to properly add the "Custody Evaluation" section factors together, resulting in an incorrect "Comprehensive Custody Score" that placed Plaintiff in "Maximum Custody."

125. Any and all objectively reasonable peace officers would know that:

    a.  Plaintiff was suffering from seizures;

    b.  Plaintiff's threat for assault was imminent;

    c.  Plaintiff's vulnerable state required additional attention and care;

    d.   the inmates in the "Maximum Custody" cell block would attack Plaintiff;

    e.   the inmates in the "Maximum Custody" cell block were likely to attack Plaintiff; and

    f.   Plaintiff should have been placed in a lower custody cell block with inmates who are not known to be dangerous that is appropriate for vulnerable inmates.

126. Any reasonable peace officer acting under clearly established law in the Southern District of Texas and confronting the same or similar facts would know:

    a.   the Fourteenth Amendment to the United States Constitution prohibits this kind of failure to protect from inmate assault in light of the facts and circumstances;

    b.   said prohibition is clearly established within the Southern District of Texas;

    c.   there was no objective justification behind Myron Riser's failure to protect form inmate assault and/or attack on Plaintiff;

    d.   Myron Riser's failure to protect Plaintiff from inmate assault carried with it the great risk of harm or death and was thus objectively unreasonable in light of the facts and circumstances; and

    e.   Myron Riser's actions failing to protect Plaintiff from inmate assault were clearly unreasonable in light of established law.

127. Myron Riser's failure to protect Plaintiff from inmate assault:

    a.   was plainly incompetent;

    b.   knowingly violated the law;

    c.   intentionally violated the law;

    d.   was the product of unreasonably mistaken beliefs;

    e.   was objectively unreasonable in light of clearly established law;

    f.   was deliberately indifferent to Plaintiff and his rights;

    g.   evidences an unreasonable misunderstanding of powers and responsibilities; and

    h.   was the moving force behind the deprivation of Plaintiff's civil rights.

128. Plaintiff was assaulted as a result of jail conditions and practices that are dangerous to:

    a.   all inmates; and

    b.   all vulnerable inmates.

129. Plaintiff seeks punitive damages against Myron Riser because he:

a.  knew at the time that the failure to protect Plaintiff from inmate assault was unreasonable;

b.  acted with conscious indifference to the possibility that Plaintiff would suffer egregious harm from his unreasonably failure to protect;

c.  acted with reckless and/or callous indifference to Plaintiff's federally protected rights;

d.  recklessly trampled on Plaintiff's rights through plainly unlawful conduct; and/or

e.  was grossly negligent under the circumstances herein.

### COUNT 3 – 42 U.S.C. § 1983

### Francis McIntyre, Cody Hickman, and M. Watkins violated Plaintiff's constitutional right to be protected from inmate assault.

130.  The foregoing paragraphs are incorporated herein as if quoted verbatim.

131.  On or about January 14-16, 2016, Plaintiff's constitutional right to be protected from inmate assault by a peace officer acting under color of state law was:

a.  secured to him by the Due Process Clause of the Fourteenth Amendment of the United States;

b.  clearly established within the Southern District of Texas; and

c.  violated by Francis McIntyre, Cody Hickman, and M. Watkins.

132.  Cody Hickman and M. Watkins failed to protect Plaintiff from inmate assault by:

a.  failing to keep adequate watch of the inmates in the pod to which Plaintiff was assigned;

b.  allowing inmates to take Plaintiff into the known blind spot to Cody Hickman's and M. Watkins' vantage point inside the pod control center;

c.  allowing about a dozen other inmates to assault Plaintiff while under their supervision;

d.  allowing Plaintiff to be sexually assaulted by an inmate known to have sexually assaulted other inmates;

e.  allowing inmates to kick Plaintiff in the head, punch him, and bite him in his left hand;

f.  allowing Plaintiff to be sodomized by an inmate known to have sexually assaulted other inmates;

g.  failing to allow any means of escape by Plaintiff from his attackers;

h.  failing to timely call for help for Plaintiff;

i.  failing to adequately investigate the assault;

j.  failing to list any other persons in the offense report as involved in the assault;

k.  failing to take any statements regarding the assault;

l.  failing to offer Plaintiff any medical services after the assaults;

m.  leaving Plaintiff in a shower for an hour after the assaults; and

n.  taking Plaintiff to another holding cell after the assaults where he suffered additional seizures.

133. Cody Hickman failed to protect Plaintiff from inmate assault by:

a.  failing to properly complete an offense report regarding this incident by listing Plaintiff as the "Inmate Charged;" and

b.  failing to properly supervise a known blind spot to Cody Hickman's vantage point inside the pod control center.

134. M. Watkins failed to protect Plaintiff from inmate assault by:

a.  failing to properly supervise a known blind spot to the Harris County Sheriff's Office Detention Officers over which M. Watkins was charged with supervising;

b.  allowing inmates to take Plaintiff into the known blind spot to the Harris County Sheriff's Office Detention Officers over which M. Watkins was charged with supervising;

c.  failing to properly supervise the investigation of the assaults;

d.  failing to require an adequate investigation of the assaults;

e.  failing to prevent Plaintiff from being listed as the "Inmate Charged;" and

f.  failing to properly supervise the completion of the offense report regarding this incident.

135. Francis McIntyre failed to protect Plaintiff from inmate assault by:

a.  refusing to recognize the threat when it was known or should have known that Plaintiff would suffer more seizures;

b.  refusing to protect Plaintiff from the threat when it was known or should have known that Plaintiff would suffer more seizures; and

    c.  not offering Plaintiff medical services, as indicated in the offense report for his encounter with Plaintiff, written by Francis McIntyre.

136. Francis McIntyre was deliberately indifferent to Plaintiff when he assaulted Plaintiff.

137. Francis McIntyre, Cody Hickman, and M. Watkins were deliberately indifferent to Plaintiff:

    a.  due to the jail conditions and practices in Harris County Jail that are dangerous to:

        i.  all inmates; and

        ii.  all vulnerable inmates;

    b.  by failing to respond to Plaintiff's particular threat and danger; and

    c.  failing to protect vulnerable inmates against known dangerous inmates.

138. Any and all objectively reasonable peace officers would know that:

    a.  Plaintiff was suffering from seizures;

    b.  Plaintiff was a particularly vulnerable inmate;

    c.  Plaintiff's threat for assault was imminent;

    d.  Plaintiff's threat for sexual assault by "T" was imminent;

    e.  Plaintiff's vulnerable state required additional attention and care;

    f.  the blind spot inside the pod control center posed a serious threat to inmate safety;

    g.  the inmates in the "Maximum Custody" cell block would attack Plaintiff;

    h.  the inmates in the "Maximum Custody" cell block were likely to attack Plaintiff;

    i.  the inmate known as "T" would sexually assault Plaintiff; and

    j.  the inmate known as "T" was likely to sexually assault Plaintiff.

139. Any reasonable peace officer acting under clearly established law in the Southern District of Texas and confronting the same or similar facts would know:

    a.  the Fourteenth Amendment to the United States Constitution prohibits this kind of failure to protect from inmate assault in light of the facts and circumstances;

    b.  said prohibition is clearly established within the Southern District of Texas;

    c.  there was no objective justification behind Francis McIntyre's, Cody Hickman's, and M. Watkins' failure to protect from inmate assaults and/or attacks on Plaintiff;

    d.  Francis McIntyre's, Cody Hickman's, and M. Watkins' failure to protect Plaintiff from inmate assaults carried with it the great risk of harm or death and was thus objectively unreasonable in light of the facts and circumstances; and

    e.   Francis McIntyre's, Cody Hickman's, and M. Watkins' actions failing to protect Plaintiff from inmate assaults were clearly unreasonable in light of established law.

140. Francis McIntyre's, Cody Hickman's, and M. Watkins' failure to protect Plaintiff from inmate assault:

    a.   was plainly incompetent;

    b.   knowingly violated the law;

    c.   intentionally violated the law;

    d.   was the product of unreasonably mistaken beliefs;

    e.   was objectively unreasonable in light of clearly established law;

    f.   evidences an unreasonable misunderstanding of powers and responsibilities; and

    g.   was the moving force behind the deprivation of Plaintiff's civil rights.

141. Plaintiff seeks punitive damages against Francis McIntyre, Cody Hickman, and M. Watkins because they:

    a.   knew at the time that the failure to protect Plaintiff from inmate assaults was unreasonable;

    b.   acted with conscious indifference to the possibility that Plaintiff would suffer egregious harm from his unreasonably failure to protect;

    c.   acted with reckless and/or callous indifference to Plaintiff's federally protected rights;

    d.   recklessly trampled on Plaintiff's rights through plainly unlawful conduct; and/or

    e.   were grossly negligent under the circumstances herein.

## COUNT 4 – 42 U.S.C. § 1983

## Myron Riser violated Plaintiff's constitutional right to receive adequate medical care as a condition-of-confinement.

142. The foregoing paragraphs are incorporated herein as if quoted verbatim.

143. Myron Riser refused to consider Plaintiff's disabilities when filling out the classification paperwork.

144. Myron Riser refused to allow Plaintiff receive adequate medical care by sending him to "Maximum Custody" instead of a place where Plaintiff could receive the medical care he required.

145. Myron Riser abused his discretion by failing to exercise sound, reasonable, and legal decision-making skills when:

    a. refusing to circle either "General Population" or "Other non-Victimization Vulnerable housing" to designate whether Plaintiff should be given a vulnerable inmate classification and custody designation;

    b. causing Plaintiff to be improperly placed in "Highest" security custody, resulting in an assault against him;

    c. refusing to take Plaintiff's known disability into account when placing him in a specific cell block of custody;

    d. refusing to properly complete the "Vocational" section of the "Inmate Needs Assessment" form;

    e. refusing to allow the noted "Disable" condition of Plaintiff be taken into account when classifying Plaintiff to a custody level;

    f. refusing to properly complete the "Severity of Current Offense" question of the "Custody Evaluation" section within the Initial Assessment and Custody Classification paperwork; and

    g. refusing to properly add the "Custody Evaluation" section factors together, resulting in an incorrect "Comprehensive Custody Score" that placed Plaintiff in "Maximum Custody."

146. Myron Riser's refusal to allow Plaintiff to receive adequate medical care caused Plaintiff's injuries.

## COUNT 5 – 42 U.S.C. § 1983

### Francis McIntyre, Cody Hickman, and M. Watkins violated Plaintiff's constitutional right to receive adequate medical care as a condition-of-confinement.

147. The foregoing paragraphs are incorporated herein as if quoted verbatim.

148. On or about January 14-16, 2016, Plaintiff's constitutional right to receive adequate medical care as a condition-of-confinement by a peace officer acting under color of state law was:

    a. secured to him by the Due Process Clause of the Fourteenth Amendment of the United States;

    b. secured to him by the Eighth Amendment of the United States;

    c.  clearly established within the Southern District of Texas; and

    d.  violated by Francis McIntyre, Cody Hickman, and M. Watkins.

149. Francis McIntyre, Cody Hickman, and M. Watkins failed to provide Plaintiff with adequate medical care as a condition-of-confinement by:

    a.  failing to consider Plaintiff's disability during and after the assaults;

    b.  failing to timely call for help for Plaintiff during the assaults;

    c.  failing to take Plaintiff to medical or the infirmary immediately after the assaults;

    d.  failing to adequately investigate the assaults;

    e.  failing to list any other persons in the offense report as involved in the assault;

    f.  failing to take any statements regarding the assault;

    g.  failing to offer Plaintiff any medical services after the assaults;

    h.  leaving Plaintiff in a shower for an hour after the assaults;

    i.  taking Plaintiff to another holding cell after the assaults where he suffered additional seizures; and

    j.  refusing to act on Plaintiff's complaint against the Harris County Sheriff's Office for this incident.

150. Cody Hickman failed to provide Plaintiff with adequate medical care as a condition-of-confinement by failing to properly complete an offense report regarding this incident by listing Plaintiff as the "Inmate Charged."

151. M. Watkins failed to provide Plaintiff with adequate medical care as a condition-of-confinement by:

    a.  failing to properly supervise the officers in charge of timely calling for help for Plaintiff;

    b.  failing to properly supervise the officers in charge of taking Plaintiff to medical or the infirmary immediately after the assaults;

    c.  failing to properly supervise the investigation of the assaults;

    d.  failing to require an adequate investigation of the assaults;

    e.  failing to properly complete an offense report regarding this incident by failing to prevent Plaintiff from being listed as the "Inmate Charged;" and

    f.  failing to properly supervise the completion of the offense report regarding this incident.

152. Francis McIntyre, Cody Hickman, and M. Watkins were deliberately indifferent to Plaintiff's serious medical needs by:

    a.  refusing to consider Plaintiff's disability during and after the assaults;

    b.  refusing to timely call for help for Plaintiff during the assaults;

    c.  refusing to take Plaintiff to medical or the infirmary immediately after the assaults; and

    d.  refusing to act on Plaintiff's complaint against the Harris County Sheriff's Office for this incident.

153. Francis McIntyre was deliberately indifferent to Plaintiff's serious medical needs by:

    a.  refusing to consider Plaintiff's disability into account when escorting him;

    b.  further assaulting Plaintiff while he suffered another seizure;

    c.  refusing to take Plaintiff to medical or the infirmary following Plaintiff's seizure and Francis McIntyre's further assault on Plaintiff;

    d.  leaving Plaintiff in a holding cell, without regard for his disability, following Plaintiff's seizure and Francis McIntyre's further assault on Plaintiff; and

    e.  acknowledging in the offense report for this incident that he did not offer medical services to Plaintiff.

154. Cody Hickman was deliberately indifferent to Plaintiff's serious medical needs by:

    a.  refusing to properly complete an offense report regarding this incident by listing Plaintiff as the "Inmate Charged;"

    b.  refusing to list any other persons in the offense report as involved in the assault;

    c.  refusing to take any statements regarding the assault;

    d.  refusing to offer Plaintiff any medical services after the assaults;

    e.  leaving Plaintiff in a shower for an hour after the assaults; and

    f.  taking Plaintiff to another holding cell after the assaults where he suffered additional seizures.

155. M. Watkins was deliberately indifferent to Plaintiff's serious medical needs by:

    a.  failing to properly supervise the officers in charge of timely calling for help for Plaintiff;

    b.  failing to properly supervise the officers in charge of taking Plaintiff to medical or the infirmary immediately after the assaults;

    c.   failing to adequately investigate the assaults;

    d.   failing to properly supervise the investigation of the assaults;

    e.   failing to require an adequate investigation of the assaults;

    f.   failing to properly complete an offense report regarding this incident by failing to prevent Plaintiff from being listed as the "Inmate Charged";

    g.   failing to list any other persons in the offense report as involved in the assault;

    h.   failing to take any statements regarding the assault;

    i.   failing to properly supervise the completion of the offense report regarding this incident;

    j.   failing to offer Plaintiff any medical services after the assaults;

    k.   leaving Plaintiff in a shower for an hour after the assaults; and

    l.   taking Plaintiff to another holding cell after the assaults where he suffered additional seizures.

156. Any and all objectively reasonable peace officers would know that:

    a.   Plaintiff was suffering from seizures;

    b.   Plaintiff was a particularly vulnerable inmate;

    c.   Plaintiff's vulnerable state required additional attention and care;

    d.   in light of his disability, an assault against Plaintiff would cause more harm than it would the average person;

    e.   Plaintiff had serious medical needs as a result of the assault against him;

    f.   Plaintiff required medical attention after being assaulted;

    g.   refusing to address Plaintiff's medical needs would cause him harm;

    h.   refusing to address Plaintiff's medical needs was likely to cause him harm;

    i.   assaulting Plaintiff would cause him harm;

    j.   assaulting Plaintiff was likely to cause him harm;

    k.   failing to properly complete an offense report regarding this incident would delay Plaintiff's medical treatment;

    l.   failing to take any statements regarding the assault would delay Plaintiff's medical treatment;

    m.  leaving Plaintiff alone in a shower for an hour would not further his medical needs;

    n.  leaving Plaintiff alone in a holding cell would further hinder his conditions and increase his medical needs;

    o.  leaving Plaintiff alone in a holding cell would not address his serious medical needs;

    p.  leaving Plaintiff alone in a holding cell would cause him harm;

    q.  leaving Plaintiff alone in a holding cell would likely cause him harm;

    r.  refusing to act on Plaintiff's complaint against the Harris County Sheriff's Office in relation to this incident would hinder his access to medical care; and

    s.  refusing to act on Plaintiff's complaint against the Harris County Sheriff's Office in relation to this incident would cause Plaintiff harm.

157. Any reasonable peace officer acting under clearly established law in the Southern District of Texas and confronting the same or similar facts would know:

    a.  the Fourteenth Amendment to the United States Constitution prohibits this kind of failure to provide adequate medical care as a condition-of-confinement in light of the facts and circumstances;

    b.  said prohibition is clearly established within the Southern District of Texas;

    c.  there was no objective justification behind Francis McIntyre's, Cody Hickman's, and M. Watkins' failure to provide Plaintiff adequate medical care as a condition-of-confinement;

    d.  Francis McIntyre's, Cody Hickman's, and M. Watkins' failure to provide Plaintiff adequate medical care as a condition-of-confinement carried with it the great risk of harm or death and was thus objectively unreasonable in light of the facts and circumstances; and

    e.  Francis McIntyre's, Cody Hickman's, and M. Watkins' failure to provide Plaintiff adequate medical care as a condition-of-confinement was clearly unreasonable in light of established law.

158. Francis McIntyre's, Cody Hickman's, and M. Watkins' failure to provide Plaintiff adequate medical care as a condition-of-confinement:

    a.  was plainly incompetent;

    b.  knowingly violated the law;

    c.  intentionally violated the law;

    d.   was the product of unreasonably mistaken beliefs;

    e.   was objectively unreasonable in light of clearly established law;

    f.   evidences an unreasonable misunderstanding of powers and responsibilities; and

    g.   was the moving force behind the deprivation of Plaintiff's civil rights.

159. Plaintiff seeks punitive damages against Francis McIntyre, Cody Hickman, and M. Watkins because they:

    a.   knew at the time that the failure to failure to provide Plaintiff adequate medical care as a condition-of-confinement was unreasonable;

    b.   acted with conscious and deliberate indifference to the possibility that Plaintiff would suffer egregious harm from his unreasonable failure;

    c.   acted with reckless and/or callous indifference to Plaintiff's federally protected rights;

    d.   recklessly trampled on Plaintiff's rights through plainly unlawful conduct; and/or

    e.   were grossly negligent under the circumstances herein.

## COUNT 6 – 42 U.S.C. § 1983

### Francis McIntyre violated Plaintiff's constitutional right to be free from excessive force.

160. The foregoing paragraphs are incorporated herein as if quoted verbatim.

161. On or about January 14-16, 2016, Plaintiff's constitutional right to remain free from the use of unreasonable and/or excessive force against his person by a peace officer acting under color of state law was:

    a.   secured to him by the Due Process Clause of the Fourteenth Amendment of the United States;

    b.   clearly established within the Southern District of Texas; and

    c.   violated by Francis McIntyre.

162. Any and all objectively reasonable peace officers would know that:

    a.   Plaintiff was suffering from seizures;

    b.   Plaintiff had just been assaulted;

    c.   Plaintiff's vulnerable state required additional attention and care;

    d.   Plaintiff's light and cautious attempt to touch was not aggressive;

     e.  Plaintiff's light and cautious attempt to touch was merely to steady himself in response to a serious medical condition; and

     f.  Plaintiff did not present a threat of any kind to anyone.

163. Any reasonable peace officer acting under clearly established law in the Southern District of Texas and confronting the same or similar facts would know:

     a.  the Fourteenth Amendment to the United States Constitution prohibits objectively unreasonable uses of force in light of the facts and circumstances;

     b.  said prohibition is clearly established within the Southern District of Texas;

     c.  Plaintiff had not committed any crime to justify Francis McIntyre's assault thereon;

     d.  there was no probable cause to believe Plaintiff had committed any crime;

     e.  the circumstances herein did not generate any objectively reasonable indicia of criminal activity;

     f.  there was no objective justification behind Francis McIntyre's attack on Plaintiff;

     g.  Plaintiff had evidenced no aggressive or threatening words or gestures that would lead a reasonable peace officer to believe that the uses of force herein were justified;

     h.  Francis McIntyre's slamming of Plaintiff against the wall carried with it the great risk of harm or death and was thus objectively unreasonable in light of the facts and circumstances; and

     i.  slamming Plaintiff against the wall in his vulnerable state was clearly unreasonable in light of established law.

164. Francis McIntyre's use of force against Plaintiff:

     a.  was plainly incompetent;

     b.  knowingly violated the law;

     c.  intentionally violated the law;

     d.  was the product of unreasonably mistaken beliefs;

     e.  was objectively unreasonable in light of clearly established law;

     f.  evidences an unreasonable misunderstanding of his powers and responsibilities; and

     g.  was the moving force behind the deprivation of Plaintiff's civil rights.

165. Plaintiff seeks punitive damages against Francis McIntyre because he:

     a.  knew at the time that the force he used against Plaintiff was unreasonably excessive;

b.  acted with conscious and deliberate indifference to the possibility that Plaintiff would suffer egregious harm from his unreasonably excessive use of force;

c.  acted with reckless and/or callous indifference to Plaintiff's federally protected rights;

d.  recklessly trampled on Plaintiff's rights through plainly unlawful conduct; and/or

e.  was grossly negligent in slamming Plaintiff against the wall under the circumstances herein.

166. At no time did Plaintiff assault Francis McIntyre.

167. At no time herein did Plaintiff engage in conduct which justified the use of force under the circumstances.

### COUNT 7 – 42 U.S.C. § 1983

### Harris County has a policy, procedure, custom, practice, or protocol of inadequately training, supervising, and/or disciplining its officers which was the moving force behind Plaintiff's injuries.

168. The foregoing paragraphs are incorporated herein as if quoted verbatim.

169. Plaintiff filed a complaint against Harris County Sheriff's Office for all of the above incidents, yet Plaintiff has received no notice of any action taken by Harris County Sheriff's Office regarding same.

170. Harris County failed to train its employees regarding:

a.  accounting for disabilities at car wrecks;

b.  how disabilities, specifically epilepsy, can affect criminal culpability;

c.  detainee custody classifications;

d.  how to protect vulnerable inmates from assaults;

e.  not using force against disabled inmates;

f.  adequately responding to vulnerable inmates when they are assaulted by other inmates; and

g.  providing inmates adequate medical care.

171. Harris County's failure to train its employees regarding each scenario above was the moving force behind Plaintiff's injuries.

172. Harris County's training, supervision, and/or discipline is inadequate as it lacks discipline for officers involved in wrongdoings, *e.g.*, the detention officers in this case.

173. Harris County's failures were deliberately indifferent to the People's clearly established rights under the Fourth Amendment to the United States Constitution and were the moving force behind Plaintiff's injuries.

174. After a reasonable opportunity for discovery, further evidence will show Harris County's liability under this cause of action.

## COUNT 8 – 42 U.S.C. § 1983

**Harris County has a policy, procedure, custom, practice, or protocol of shielding its officers from the consequences of illegal and/or improper conduct, thereby implicitly sanctioning such conduct by its officers.**

175. The foregoing paragraphs are incorporated herein as if quoted verbatim.

176. Harris County's historical willingness to overlook official misconduct within its jail has directly resulted in the officers involved in this incident receiving zero consequences.

177. The officers knew they were not in danger of any meaningful discipline for their unlawful conduct.

178. This knowledge was the moving force behind Plaintiff's injuries.

179. Harris County's failures to discipline their employee officers were deliberately indifferent to the People's clearly established rights under the Fourth Amendment to the United States Constitution and were the moving force behind Plaintiff's injuries.

180. After a reasonable opportunity for discovery, further evidence will show Harris County's liability under this cause of action.

## COUNT 9 – 42 U.S.C. § 1983

**Harris County has a policy, procedure, custom, practice, or protocol of ratifying, accepting, and/or approving its officers' illegal and/or improper conduct.**

181. The foregoing paragraphs are incorporated herein as if quoted verbatim.

182. Harris County has officially ratified, accepted, and approved its detention officers' actions during this incident as evidenced by its lack of action regarding this incident, and its lack of action concerning prior incidents.

183. Harris County's failures were deliberately indifferent to the People's clearly established rights under the Fourth Amendment to the United States Constitution and were the moving force behind Plaintiff's injuries.

184. After a reasonable opportunity for discovery, further evidence will show Harris County's liability under this cause of action.

## COUNT 10 – 42 U.S.C. § 12131

### Harris County violated Plaintiff's rights under the Americans with Disabilities Act.

185. The foregoing paragraphs are incorporated herein as if quoted verbatim.

186. On or about January 14-16, 2016, Plaintiff's statutory right to be free from benefit exclusion and discrimination because of his disability by a peace officer acting under color of state law was:

   a. secured to him by the Americans with Disabilities Act ("ADA");

   b. clearly established within the Southern District of Texas; and,

   c. violated by Harris County and the named defendant employees of Harris County Sheriff's Office.

187. Harris County discriminated against and excluded Plaintiff from benefits by:

   a. intentionally excluding Plaintiff from proper accommodations in light of Plaintiff's known disability;

   b. failing to make reasonable accommodations for Plaintiff's known disability at all stages of Harris County's custody of Plaintiff;

   c. failing to circle either "General Population" or "Other non-Victimization Vulnerable housing" to designate whether Plaintiff should be given a vulnerable inmate classification and custody designation;

   d. causing Plaintiff to be improperly placed in "Highest" security custody, resulting in an assault against him;

   e. refusing to take Plaintiff's known disability into account placing him in a specific cell block of custody;

   f. refusing to properly complete the "Vocational" section of the "Inmate Needs Assessment" form;

   g. refusing to properly complete the "Severity of Current Offense" question of the "Custody Evaluation" section within the Initial Assessment an Custody Classification paperwork;

31

h.  refusing to properly add the "Custody Evaluation" section factors together, resulting in an incorrect "Comprehensive Custody Score" that placed Plaintiff in "Maximum Custody" resulting in an assault against Plaintiff;

i.  refusing to consider Plaintiff's disability during and after the assaults;

j.  refusing to timely call for help for Plaintiff during the assaults;

k.  refusing to properly supervise the officers in charge of timely calling for help for Plaintiff;

l.  refusing to take Plaintiff to medical or the infirmary immediately after the assaults;

m.  refusing to properly supervise the officers in charge of taking Plaintiff to medical or the infirmary immediately after the assaults;

n.  refusing to adequately investigate the assaults;

o.  refusing to properly supervise the investigation of the assaults;

p.  refusing to require an adequate investigation of the assaults;

q.  refusing to properly complete an offense report regarding this incident by listing Plaintiff as the "Inmate Charged";

r.  refusing to list any other persons in the offense report as involved in the assault;

s.  refusing to take any statements regarding the assault;

t.  refusing to properly supervise the completion of the offense report regarding this incident;

u.  refusing to offer Plaintiff any medical services after the assaults;

v.  leaving Plaintiff in a shower for an hour after the assaults;

w.  further assaulting Plaintiff during an epileptic episode;

x.  taking Plaintiff to another holding cell after the assaults where he suffered additional seizures; and,

y.  refusing to act on Plaintiff's complaint against the Harris County Sheriff's Office for this incident.

### **COUNT 11 – 29 U.S.C. § 794(a) & 29 U.S.C. § 701**

### **Harris County violated Plaintiff's rights under § 504 of the Rehabilitation Act for discriminating against individuals with disabilities.**

188. The foregoing paragraphs are incorporated herein as if quoted verbatim.

189. On or about January 14-16, 2016, Plaintiff's statutory right to be free from benefit exclusion and discrimination because of his disability by a peace officer acting under color of state law was:

   a. secured to him by Section 504 of the Rehabilitation Act;

   b. clearly established within the Southern District of Texas; and,

   c. violated by Harris County and the named defendant employees of Harris County Sheriff's Office.

190. Harris County discriminated against and excluded Plaintiff from benefits by:

   a. intentionally excluding Plaintiff from proper accommodations in light of Plaintiff's known disability;

   b. failing to make reasonable accommodations for Plaintiff's known disability at all stages of Harris County's custody of Plaintiff;

   c. failing to circle either "General Population" or "Other non-Victimization Vulnerable housing" to designate whether Plaintiff should be given a vulnerable inmate classification and custody designation;

   d. causing Plaintiff to be improperly placed in "Highest" security custody, resulting in an assault against him;

   e. failing to take Plaintiff's known disability into account placing him in a specific cell block of custody;

   f. failing to properly complete the "Vocational" section of the "Inmate Needs Assessment" form;

   g. failing to properly complete the "Severity of Current Offense" question of the "Custody Evaluation" section within the Initial Assessment an Custody Classification paperwork;

   h. failing to properly add the "Custody Evaluation" section factors together, resulting in an incorrect "Comprehensive Custody Score" that placed Plaintiff in "Maximum Custody" resulting in an assault against Plaintiff;

   i. failing to consider Plaintiff disability during and after the assaults;

   j. failing to timely call for help for Plaintiff during the assaults;

   k. failing to properly supervise the officers in charge of timely calling for help for Plaintiff;

l.   failing to take Plaintiff to medical or the infirmary immediately after the assaults;

m.   failing to properly supervise the officers in charge of taking Plaintiff to medical or the infirmary immediately after the assaults;

n.   failing to adequately investigate the assaults;

o.   failing to properly supervise the investigation of the assaults;

p.   failing to require an adequate investigation of the assaults;

q.   failing to properly complete an offense report regarding this incident by listing Plaintiff as the "Inmate Charged";

r.   failing to list any other persons in the offense report as involved in the assault;

s.   failing to take any statements regarding the assault;

t.   failing to properly supervise the completion of the offense report regarding this incident;

u.   failing to offer Plaintiff any medical services after the assaults;

v.   leaving Plaintiff in a shower for an hour after the assaults;

w.   further assaulting Plaintiff during an epileptic episode;

x.   taking Plaintiff to another holding cell after the assaults where he suffered additional seizures; and,

y.   failing to act on Plaintiff's complaint against the Harris County Sheriff's Office for this incident.

## VIII.   <u>DAMAGES</u>

191. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered injuries and damages.

192. Plaintiff therefore seeks compensatory damages (including legal fees, lost future earnings, lost wages, and mental and emotional distress), presumed damages, nominal damages, and punitive damages.

## IX.   <u>ATTORNEY FEES</u>

193. After prevailing herein, Plaintiff is entitled to an award of attorney fees and costs under 42 U.S.C. § 1988, 42 U.S.C. § 12205, and 29 U.S.C. § 794a(b).

## X.   <u>PRAYER</u>

194. For these reasons, Plaintiff asks for judgment against Defendant for the following:

(a)     compensatory damages;

(b)     presumed damages;

(c)     nominal damages;

(d)     punitive damages;

(e)     reasonable attorney fees;

(f)     costs of suit; and

(g)     all other relief to which Plaintiff shows himself entitled, both at law and in equity.

Respectfully submitted,

By:*/s/ Drew Willey*
        Drew Willey
        SBN: 24093371
        P.O. Box 2813
        Houston, Texas 77252
        713-739-9455 (p)
        713-510-1950 (f)
        drew@law-dw.com
        ATTORNEY FOR PLAINTIFF