UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN DOE, | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:18-cv-106 |
| | § | |
| HARRIS COUNTY, TEXAS, et al. | § | |
| *Defendants.* | § | |

**PLAINTIFF'S AMENDED OPPOSITION TO DEFENDANTS' CONSOLIDATED MOTION
FOR SUMMARY JUDGMENT**

Plaintiff JOHN DOE respectfully comes before this Honorable Court and files his Amended
Opposition to Defendants' Consolidated Motion for Summary Judgment and, in support thereof, shows
as follows: Triable issues of material facts exist to his claims against (1) the individual deputies at the jail
for failure to protect Plaintiff from inmate assaults and failure to provide medical care, and (2) Harris
County ("County") under *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978), the
Americans With Disabilities Act ("ADA"), and the Rehabilitation Act ("RA").[1]

## I.        FACTUAL BACKGROUND

Prior to the events giving rise to this suit, Plaintiff suffered from epilepsy, a condition causing
seizures, for most of his life.[2] Plaintiff's epileptic condition substantially limits major life activities such
as his ability to care for himself, eat, sleep, speak, learn, read, concentrate, think, communicate, interact
with others, work, and consortium activities.[3]

### 1.   Initial Accident

On January 14, 2016, Plaintiff was driving and suffered an epileptic episode resulting in multiple
car collisions.[4] When Harris County Sheriff's Office ("HCSO") deputies arrived at the scene, Plaintiff

---

[1] Because probable cause existed at the time of Plaintiff's arrest, he waives his claim for false arrest.
[2] Ex. E, Aff. of John Doe ("Doe Aff."), ¶ 2.
[3] Ex. E, Doe Aff., ¶ 6
[4] Ex. E, Doe Aff., ¶ 3.

was unconscious in his vehicle. [5]  Plaintiff was unaware of the collision, until the deputies woke him up and informed him that he was involved in an accident.[6]  Plaintiff informed a deputy that he had suffered multiple seizures, blacked out while driving and did not recall being in any accidents.[7]  Plaintiff repeatedly told the deputies he needed to go to the hospital.[8]  With knowledge that Plaintiff had suffered multiple seizures while driving and involuntarily caused a multiple car accident, the deputies arrested Plaintiff for failure to stop and render aid.[9]

## 2.  Harris County Jail and Inmate-on-Inmate Sexual Assault

In 2016, the Department of Justice ("DOJ") published the Report on Sexual Victimization in Prisons, Jails and Juvenile Correctional Facilities.[10]  The Report presents the findings of the Review Panel based on its January and August 2014 hearings in Washington, D.C.  The Panel gathered information on the practices of selected correctional institutions that had either a low or high prevalence of sexual victimization. Out of 358 jails that participated in the survey, nine (9) were identified as "high-rate facilities" based on reports by inmates of inmate-on-inmate sexual assault. The national average of inmate-on-inmate sexual assaults was 1.6%. Harris County Jail ("HCJ") ranked the third highest of all jails at 6.3%. As a result of the DOJ findings, the DOJ made recommendations to County for it to become compliant with the Prison Rape Elimination Act of 2003 ("PREA"). [11]

## 3.  Harris County Jail and Prison Rape Elimination Act Compliance

In response to the DOJ Report and the HCSO Office of Inspector General, Internal Affairs Division investigation that revealed inappropriate sexual contact between jail staff and inmates, the HCJ

[5] Ex. E, Doe Aff., ¶¶ 3-4, 7 (*See* Ex. E).
[6] Ex. E, Doe Aff., ¶¶ 3-4, 7 (*See* Ex. E).
[7] Ex. E, Doe Aff., ¶ 7 (*See* Ex. "E").
[8] Ex. B, Harris County Sheriff's Office ("HCSO") Sworn Statement of John Doe.
[9] Ex. E, Doe Aff., ¶ 8 (
[10] Ex. M, Report on Sexual Victimization in Prisons, Jails and Juvenile Correctional Facilities, Department of Justice, Review Panel on Prison Rape, April 2016
[11] *Id*.

established a PREA compliance committee to come into full compliance with PREA's jail standards.[12]

As part of its PREA compliance efforts, HCSO created and implemented a staff sexual misconduct policy and PREA policy. The policy states:

> It is the policy of the Harris County Jail to comply with all standards set forth by the Prison Rape Elimination Act ("PREA") to prevent, respond, educate, screen and report sexual misconduct in all of its facilities.[13]

In respect to inmates with disabilities, HCJ attempts to identify individuals who may be vulnerable to sexual assault due to their disability through a screening process.[14]  HCJ's policy requires that each inmate be assessed with a PREA Victimization Vulnerable & Potential Predator Screening Form upon arrival at the jail.[15]   One of the nine factors that is considered is "Physical, developmental or mental health history."[16] While the form indicates that "Victimization Vulnerable Housing" is available for inmates who are determined to be vulnerable, HCJ's policy does not specifically address individuals who may not be able to protect themselves because of their disability.[17]  This policy does not indicate that disabled inmates should be given housing accommodations when their disability impairs their ability to protect themselves from inmate-to-inmate sexual assault; the policy does, however, state that accommodations should be given to ensure "effective communication with inmates" with visual or auditory disabilities.[18]

### 4. Harris County Jail and ADA Compliance

HCJ defines an inmate as disabled if: 1) the individual has a physical or mental impairment that

---

[12] Ex. M, Report on Sexual Victimization in Prisons, Jails and Juvenile Correctional Facilities, Department of Justice, Review Panel on Prison Rape, April 2016, pp. 43-45.
[13] Ex. I, HCSO Prison Rape Elimination Act Policy # CJC-1162, HC/DOE-157.
[14] Ex. H, Captain Ronny Taylor Dep. Tr. ("Cpt. Taylor Dep."), 61:10-19.Captain Ronny Taylor was designated by Defendant Harris County as the Rule 30(b)6 witness to testify to Harris County Jail's policy, practices and procedures relating to: 1) the Inmate Observation Policy #CJC-220; 2) the Inmate Classification Plan for classification assessments, housing assignments, reassessments and inmates; 3) the Prison Elimination Act of 2003 that were in effect on January 15, 2016; and 4) Harris County's compliance with the Americans with Disabilities Act that were in effect on January 15, 2016.
[15] Ex. J, HCSO PREA Victimization Vulnerable & Potential Predator Screening Form.
[16] *Id.*
[17] Ex. H, Cpt. Taylor Dep. Tr., 49:8-51:7.
[18] Ex. L, HCSO Americans with Disability Act Policy # CJC-202, HC/DOE-64, p. 5, §115.6; Ex. H. Cpt. Taylor Depo Tr., 48:13-49:24

substantially limits one or more major life activities; 2) the individual has a history/record of such an impairment; or 3) the individual is perceived by others as having such an impairment.[19]  Patients with a known history of developmental disabilities or those exhibiting signs of developmental disabilities will be assessed to establish a care plan to manage their special needs.[20]

Patients who have a history of seizures are considered disabled.[21] Pursuant to HCSO Policy #J-G-02C, a history of seizures is treated as a developmental disability.[22]  "Patients should be started/maintained on seizure medication [and] [a]ppropriate referral to CCC should be made."[23]  HCSO also considers a history of seizures as a physical disability, according to Policy # J-G-02F.[24]

HCJ considered Plaintiff disabled.[25] To accommodate his disability, HCJ assigned Plaintiff to a lower bunk in the event that he suffered a seizure while sleeping.[26]  However, HCJ did not provide Plaintiff with an accommodation in the event that he was unable to protect himself due to passing out because of a seizure.[27]  Conversely, inmates who are spastic and unable to protect themselves when passing out during a spastic episode are accommodated with housing in the medical unit.[28]

**5.  Policy Regarding Housing Accommodations for Disabled Inmates**

Pursuant to HCSO's Manual of Policies and Procedures For Health Services, Policy # J-A-08, "[c]ommunication occurs between Health Services and the Housing Bureau regarding significant health needs of inmates that must be taken into account in classification decisions in order to preserve the health

---

[19] *Id.*
[20] Ex. K, HCSO Manual of Policies and Procedures for Health Services – Developmental Disability Protocol
[21] Ex. L, HCSO Americans with Disability Act Policy # CJC-202, HC/DOE-64
[22] Ex. K, Harris County Sheriff's Office Policy Number J-G-02C, Manual and Policies and Procedures for Health Services, at p.3, sections 4.1.8.1 and 4.1.8.2.
[23] *Id.*
[24] Ex. Q, Harris County Sheriff's Office, Policy Number J-G-02F, Manual and Policies and Procedures for Health Services, at p.3, sections 4.1.8.1 (stating "Patients should be started/maintained on seizure medication.", and 4.1.8.2. "Appropriate referral to CCC should be made.")
[25] Ex. C, HCSO Inmate Classification Section Records.
[26] Ex. G, ECF No. 48-18, Myron Riser Decl.; Ex. H, Cpt. Taylor Dep. Tr., 16:12-17.
[27] Ex. H, Cpt. Taylor Dep. Tr., 22:8-20,
[28] Ex. H, Cpt. Taylor Dep. Tr., 16:24-18:20; 23:23-24.

and safety of the inmate, other inmates and/or the correctional staff."[29] The Health Services division must notify the Housing Bureau, in writing using the Special Needs Form and/or the Classification Inmate Transfer Form of any inmates who require special consideration due to significant health needs.[30] This communication is required for inmates who are physically and developmentally disabled like Plaintiff.[31]

On December 20, 2019, Captain Ronny Taylor testified that HCJ's Policy is that inmates with disabilities are to be given considerations in their housing.[32] Upon arrival at the HCJ, inmates are given an Initial Intake Health Screening by Health Services to determine if the inmate has any injuries, illnesses and/or disabilities that would require accommodations.[33] Taylor testified that if an inmate is identified as disabled during the health screening process, HCJ's policy is that the inmate's disability is to be communicated to the Housing Bureau so that the inmate's disability could be accommodated.[34]

Pursuant to HCJ's policy, spastic inmates who may pass out and be unable to protect themselves during a spastic episode are accommodated with housing in the medical unit.[35] Yet, epileptic inmates who may pass out and be unable to protect themselves during a seizure are not given housing accommodations; they are only assigned a lower bunk.[36] Harris County does not have a rational basis for failing to place inmates with a history of seizures in the medical unit.[37]

[29] Ex. N, HCSO Manual of Policies and Procedures for Health Services, Policy #J-A-08, Communication of Patients' Health Needs, at p. 1, section 1.0.
[30] Ex. N, HCSO Manual of Policies and Procedures for Health Services, Policy #J-A-08, Communication of Patients' Health Needs, at p. 1, section 2.0.
[31] Ex. N, HCSO Manual of Policies and Procedures for Health Services, Policy #J-A-08, Communication of Patients' Health Needs, at p. 1-2, sections 2.2, 2.26, and 2.2.12.
[32] Ex. H, Cpt. Taylor Dep. Tr., 7:17-12:21 (Captain Ronny Taylor was designated by Defendant Harris County as the Rule 30(b)6 witness to testify to Harris County Jail's policy, practices and procedures relating to: 1) the Inmate Observation Policy #CJC-220; 2) the Inmate Classification Plan for classification assessments, housing assignments, reassessments and inmates; 3) the Prison Elimination Act of 2003 that were in effect of January 15, 2016; and 4) Harris County's compliance with the Americans with Disabilities Act that were in effect on January 15, 2016).
[33] Ex. H, Cpt. Taylor Dep. Tr., 18:10-25.
[34] Ex. H., Cpt. Taylor Dep. Tr., 30:20-24; 34:7-35:6.
[35] Ex. H., Cpt. Taylor Dep. Tr., 16:24-18:20; 23:23-24:8.
[36] Ex. H., Cpt. Taylor Dep. Tr., 16:12-17; 22:8-20.
[37] Ex. H., Cpt. Taylor Dep. Tr., 18:16-20.

### 6.   Plaintiff's Initial Intake Health Screening

Upon Plaintiff's arrival at HCJ, he was given an initial intake health screening by Joseph Nwabueze, RN.[38]  Under "Medical Problems," Nurse Nwabueze listed "Seizure" and "Hypertension" and, under "Medical History Comments," noted that Plaintiff presented labored breathing, hypertension, and a history of seizures.[39]  Nurse Nwabueze further noted that Plaintiff had a seizure on January 14, 2015 and that Plaintiff consented to medical treatment and that Plaintiff was to go to medical for breathing difficulties, hypertension and seizure immediately.[40]

Pursuant to HCSO's Manual of Policies and Procedures for Health Services, Health Services should notify the Housing Bureau (classification and floor sergeant) in writing using the Special Needs Advisement Form and/or the Classification Inmate Transfer Form of any inmates who will require special consideration in housing assignments.[41]  Defendants failed to produce a Special Needs Advisement Form or a Classification Inmate Transfer Form, despite having knowledge of Plaintiff's disability.[42]  The inference is that neither Nurse Nwabueze, nor anyone else from Health Services, communicated to the Housing Bureau that Plaintiff's disability should be accommodated.

### 7.   Custody Evaluation Forms

When Plaintiff was booked into the HCJ, he was screened by Detention Officer Myron Riser for a custody assignment. Of importance, Officer Riser evaluated Plaintiff with the following forms: 1) PREA Victimization Vulnerable & Potential Predator Screening Form; 2) Initial Custody Assessment Scale; and 3) Inmate Needs Assessment Form and Custody Classification.

#### a.   PREA Victimization Vulnerable & Potential Predator Screening Form

On the form entitled "PREA Victimization Vulnerable & Potential Predator Screening Form," [43]

---

[38] Ex. R, HSCO IPC Intake Health Screening, at p.30.
[39] *Id*. p. 29.
[40] *Id.* at p. 30.
[41] Ex. C, HCSO, Communication on Patients' Health Needs, HC/DOE-125, 2.1.
[42] Ex. A,  Johnson Aff. at ¶10.
[43] Ex. J, HCSO PREA Victimization Vulnerable & Potential Predator Screening Form.

number 4 on the Victimization Vulnerability Checklist was circled "YES" for "Physical, developmental or mental health history."  On said form Officer Riser, or the individual filling out the Custody Evaluation forms, failed to circle either "General Population" or "Other non-Victimization Vulnerable housing" to designate whether Plaintiff should be given a vulnerable inmate classification and custody designation.  If Plaintiff had been given a vulnerable inmate classification and custody designation, he would not have been placed in "Highest" security custody, resulting in an assault against him.

**b.  Inmate Needs Assessment Form**[44]

On the "Inmate Needs Assessment" form, Officer Riser indicated in section A, "Health," a code of "2: Mild Disability or Illness; Outpatient Treatment Required: Non-Strenuous Work," and wrote in the comments section, "seizures." After acknowledging Plaintiff's disability of suffering from seizures in the Health section on the Custody Evaluation forms, Officer Riser failed to take this disability into account when placing him in a specific custody cell block.

On the "Inmate Needs Assessment" form, Officer Riser indicated in section D, "Vocational," an unclear code, writing both 2 and 3 over one another.  A code of 2 under "Vocational" is "Limited Skills; Ability to Hold Semi-Skilled Position; Needs Training."  A code of 3 under "Vocational" is "Possess Marketable Skill or Trade."  Under comments under "Vocational," Officer Riser, or the individual filling out the Custody Evaluation forms, wrote "Disable."  Officer Riser failed to properly fill out this section of the form and recognize Plaintiff's disability when filling out these forms.  County and Officer Riser, or the individual filling out the Custody Evaluation forms, failed to take Plaintiff's disability into account when placing Plaintiff into his cell block of custody.

**c.  Initial Custody Assessment Scale Form**[45]

Harris County has an Initial Custody Assessment Scale form that includes a "Custody Evaluation" section. In the "Custody Evaluation" section:  the Severity of Current Offense was marked for 7 points,

[44] Ex. C, HCSO Inmate Classification Section Records.
[45] Ex. S, Inmate Needs Assessment Form and Custody Classification

or "Highest".  According to the Texas Commission on Jail Standards "Severity of Offense Scale," the severity of the offense for which Plaintiff was placed into custody is "High."

A "High" severity of offense classification is given 5 points on HCSO's Initial Custody Assessment Scale.  The person filling out the Custody Evaluation wrongly input a classification of "Highest," giving 7 points towards more serious custody classification. By the signature of Assessment Staff Member, it looks like Officer Riser signed and filled out the Custody Evaluation.  The Serious Offense History was marked for 4 points, or "High", and the Stability Factors was marked for -1 points for "Age Twenty-six (26) or older."

The scores for Severity of Current Offense, Serious Offense History, and Stability Factors were added together to give Plaintiff a "Comprehensive Custody Score."  Had the scores been added correctly as indicated on the form, it would have given Plaintiff a "Comprehensive Custody Score" of 10. A "Comprehensive Custody Score" of 10 places an individual in "Medium Custody," according to the Custody Classification Chart.  Instead, the person filling out the Custody Evaluation wrote a score of 11 in the "Comprehensive Custody Score," which is the lowest possible score requiring an inmate to be placed in "Maximum Custody." If the "Comprehensive Custody Score" was 10 points, Plaintiff would have been given a "Medium Custody" classification.  If the Custody Evaluation was filled out correctly, Plaintiff would have been given a Comprehensive Custody Score of 8 points, giving him a "Medium Custody" classification.

Due to his wrongful classification, Plaintiff was placed in "Maximum Custody." While in "Maximum Custody", Plaintiff was assaulted by other inmates, also given "Maximum Custody" classifications.[46]  County failed to have a supervisor adequately review the Custody Evaluation as the form classifying Plaintiff's custody level has no signature of a supervisor.[47]

**8.  Harris County Jail's Accommodations to Plaintiff**

---

[46] Ex. E, Doe Aff., ¶ 11.
[47] *Id.*

While both Health Services and Officer Riser acknowledged Plaintiff as disabled because of his seizure disorder, Plaintiff was not given a housing accommodation. Nurse Nwabueze nor anyone else from Health Services communicated Plaintiff's disability to the Housing Bureau. Officer Riser did not request that Plaintiff be given custody considerations due to his disability.

HCJ did not provide Plaintiff with a housing accommodation that would ensure his safety in the event he lost consciousness due to his seizures. The failure to provide Plaintiff with this accommodation was contrary to HCJ's policy that it would provide housing accommodations for spastic inmates—such as Plaintiff—who are unable to protect themselves if they lose consciousness due to their seizures.[48] Instead, HCJ assigned him a lower bunk in the event that he suffered a seizure while sleeping.[49]

### 9. Jail Beating and Sexual Assault of Plaintiff

On January 15, 2016, HCSO Detention Officer Cody Hickman was assigned to the pod in which Plaintiff was placed.[50]  Plaintiff told a Detention Officer he needed to go to the hospital because he felt he was going to experience another seizure but his request was ignored.[51]

A blind spot existed from Officer Hickman's vantage point inside the pod control center.[52]  Officer Hickman allowed other inmates to take Plaintiff into the blind spot from his pod control center's vantage point.[53]  Officer Hickman allowed about a dozen other inmates to assault Plaintiff.[54]  One inmate, known as "T," sexually assaulted Plaintiff.[55]  "T" was known to have sexually assaulted other inmates.[56]  Due to the sexual assault, Plaintiff defecated himself and suffered another seizure.[57]

When Officer Hickman filled out an offense report regarding this incident, he listed Plaintiff as

---

[48] Ex. H, Cpt. Taylor Dep. Tr., 16:24-18:20; 22:8-20; 23:23-24:8.
[49] Ex. H, Cpt. Taylor Dep. Tr., 16:12-20.
[50] Ex. F., Aff. of Cody Hickman ("Hickman Aff."), ¶ 2.
[51] Ex. B., HCSO Sworn Statement of John Doe.
[52] Ex. F., Hickman Aff., ¶ 2.
[53] Ex. F., Hickman Aff., ¶ 2.
[54] Ex. E, Doe Aff., ¶ 13.
[55] Ex. E, Doe Aff., ¶ 13.
[56] Ex. E, Doe Aff., ¶ 14.
[57] Ex. E, Doe Aff., ¶¶ 11,15 21.

the "Inmate Charged."[58]  Officer Hickman also indicated he did not offer medical services to Plaintiff; Plaintiff was not taken to the hospital; he did not refer Plaintiff for mental health care; no other persons were involved; and he took no statements regarding the assault.  Plaintiff was not taken to medical or the infirmary immediately after the assaults.[59]  Officer Hickman's actions and failures to act caused Plaintiff's injuries.[60]  HCSO Detention Officer M. Watkins is listed on the offense report for this incident as the "Approving Supervisor."[61]

**10. Subsequent Assault and Mistreatment by Detention Officer Francis McIntyre**

After the original assault, HCSO Detention Officer Francis McIntyre escorted Plaintiff out of the cell block, stated to Plaintiff, "T got you, huh?", and escorted Plaintiff to the elevator.[62]  Officer McIntyre was referring to "T," an inmate known by HCSO Detention Officers' to have sexually assaulted other inmates under their care.[63]

The trauma and stress caused by the assault resulted in Plaintiff suffering another seizure in the elevator.[64]  When Plaintiff experienced this seizure, he had to lean forward to catch himself.[65]  When Plaintiff leaned forward, the only thing he could catch himself on was Officer McIntyre standing in front of him.[66]  Plaintiff attempted to lightly and cautiously touch Officer McIntyre to catch himself and make the officer aware he was suffering from another seizure.[67]

When Plaintiff leaned toward Officer McIntyre for help, Officer McIntyre purposely moved, causing Plaintiff to fall against the wall and floor of the elevator, then assaulted Plaintiff by grabbing Plaintiff around his neck, pressing his forearm into Plaintiff's throat and slamming Plaintiff against the

[58] Ex. D, HCSO Inmate Offense Report.
[59] Ex. E, Doe Aff., ¶ 26.
[60] Ex. E, Doe Aff., ¶ 27.
[61] Ex. D, HCSO Inmate Offense Report.
[62] Ex. E, Doe Aff., ¶ 14.
[63] Ex. E, Doe Aff., ¶ 14.
[64] Ex. E, Doe Aff., ¶ 15.
[65] Ex. E, Doe Aff., ¶ 16; Ex. B, HCSO Sworn Statement of John Doe.
[66] Ex. E, Doe Aff., ¶ 17; Ex. B, HCSO Sworn Statement of John Doe.
[67] Ex. E, Doe Aff., ¶ 18.

wall of the elevator, causing further injury. The Officer McIntyre told Plaintiff, "Never put your fucking hands on me again."[68]

HCSO Detention Officers directed Plaintiff to the shower due to blood and feces still being on Plaintiff's person.[69]  In the shower, Plaintiff noticed his underwear was filled with blood and feces.[70] Plaintiff experienced extreme discomfort, burning and bleeding, because of the injuries from the assaults, sexual and otherwise.[71]  Plaintiff screamed for help and assistance, but was left there for about an hour.[72]

Immediately after the shower, Plaintiff was not taken to medical or the infirmary. Instead, Plaintiff was given new boxer briefs and taken to another holding cell.[73]  Plaintiff suffered six more seizures while in the holding cell, and informed detention officers of his suffering.[74]  Plaintiff filed a complaint against HCSO for all of the above incidents, yet Plaintiff has received no notice of any action taken by HCSO.[75]

## 11. Injuries

Plaintiff's epilepsy condition was exasperated because of his mistreatment by HCSO Officers. Because of his mistreatment by HCSO Officers, Plaintiff suffered and suffers from: neurological damage; severe injuries to his left eye and left hand; back, neck, and shoulder pain; breathing difficulties; residual conjunctival eye redness; residual cognitive dysfunction; physical injuries from a human bite on his left hand; migraines; hurting teeth; skin irritation, burning, and itching; intolerance to light and noise; diarrhea; hemorrhoids; muscle and joint pains; and, cold intolerance.

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

---

[68] Ex. E, Doe Aff., ¶ 19; Ex. B, HCSO Sworn Statement of John Doe.
[69] Ex. E, Doe Aff., ¶ 20.
[70] Ex. E, Doe Aff., ¶ 21.
[71] Ex. E, Doe Aff., ¶ 21.
[72] Ex. E, Doe Aff., ¶ 21.
[73] Ex. E, Doe Aff., ¶ 22-23.
[74] Ex. E, Doe Aff., ¶ 23.
[75] Ex. B, HCSO Sworn Statement of John Doe.

material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The moving party bears the burden of identifying portions of the record that demonstrate the absence of a genuine issue of material fact. *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). The Court must construe all facts and inferences in the light most favorable to the nonmovant and cannot weigh evidence or evaluate the credibility of witnesses. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).

## III.    ARGUMENT

### A. Because Genuine Issues of Material Fact Exist As to Plaintiff's Americans With Disability Act and Rehabilitation Act Claims for Harris County's Failure to Reasonably Accommodate His Disability, Summary Judgment Must Be Denied

#### 1.    Applicable Law

To prove a claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*, Plaintiff must submit evidence that demonstrates that he was denied benefits or services due to his disability or discriminated against by reason of his disability. *Hale v. King*, 642 F.3d 492, 299 (5th Cir. 2011). Similarly, to prove a claim under the Rehabilitation Act ("RA"), 29 U.S.C. § 791, 794 *et seq.*, Plaintiff must submit evidence that demonstrates that he was denied benefits or subject to discrimination under a program to which he was an intended beneficiary. *Hay v. Thaler*, 470 F. App'x 411, 417-418 (5th Cir. 2012) (quoting *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 676 n. 8 (5th Cir. 2004)).

ADA and RA claims may be based upon a theory of failure to reasonably accommodate Plaintiff's disability. *Hainze v. Richards*, 207 F.3d 795, 802 (5th Cir. 2000) (stating once an arrestee is secured and there is no threat to human safety, officers are "under a duty to reasonably accommodate [Plaintiff's] disability"). Title II of the ADA imposes an obligation on public entities to make reasonable accommodations or modifications for disabled persons, including prisoners. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 213 (1998). A correctional facility's "deliberate refusal" to accommodate plaintiff's disability-related needs violates the ADA and the RA. *See United States v. Georgia*, 546 U.S. 151, 157, 126 S. Ct. 877 (2006) ("[T]he alleged deliberate refusal of prison officials to accommodate [plaintiffs]

12

disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs constituted [an ADA violation].").

### 2. Relevant Facts and Argument

As discussed above, Defendants had knowledge that 1) Plaintiff was disabled in terms of the ADA and the RA; 2) at the time of Plaintiff's incarceration at HCJ, the DOJ had determined HCJ as a high rate facility in regard to inmate-on-inmate sexual assault; 3) Plaintiff's seizure disorder could cause him to lose consciousness, and 4) as a result of Plaintiff's disability, he was vulnerable in a custodial setting and highly susceptible to an inmate-on-inmate sexual assault.

HCJ Medical Services failed to reasonably accommodate Plaintiff by failing to inform HCJ Housing Bureau of Plaintiff's disability, which was required by HCJ's policy. Additionally, Defendant Myron Riser failed to reasonably accommodate Plaintiff by improperly filling out Plaintiff's assessment forms. Because Defendants failed to reasonably accommodate Plaintiff's disability, Plaintiff was housed in maximum custody, where he was sexually assaulted by other inmates after suffering multiple seizures and losing consciousness.

Defendants argue they reasonably accommodated Plaintiff's disability by assigning him to a bottom bunk. However, said accommodation does not address the danger posed to an epileptic individual who is incapable of defending himself when suffering a seizure. Based on Defendants' knowledge that Plaintiff had epilepsy and experienced multiple seizures on the date of his arrest, coupled with Defendants' knowledge that HCJ has a high incident of inmate-on-inmate sexual violence[76], the reasonable accommodation would have been to transport Plaintiff to the hospital, assign him a bed in the medical unit, or place him in medium custody.

### B. **Because Disputed Genuine Issues of Material Facts Exist as to Whether Defendant Myron Riser Was Deliberately Indifferent to Plaintiff's Due Process Rights Under the Fourteenth Amendment, Summary Judgment Must Be Denied**

---

[76] Ex. M, Report on Sexual Victimization in Prisons, Jails and Juvenile Correctional Facilities at p. 8

1. **Applicable Law**

The Due Process Clause of the Fourteenth Amendment of the United States Constitution requires the state to provide for the "basic human needs" of pretrial detainees, including the right to adequate medical care. *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996); *see also Thompson v. Upshur County*, 245 F.3d 447, 457 (5th Cir. 2001) ("[P]retrial detainees have a constitutional right, under the Due Process Clause of the Fourteenth Amendment, not to have their serious medical needs met with deliberate indifference on the part of the confining officials.").

A prison official violates the right to medical care when he acts with deliberate indifference to the serious medical needs of an inmate. *Farmer v. Brennan*, 511 U.S. 825 (1994). In confinement cases, "deliberate indifference" requires an official to be "subjectively aware" of the substantial risk of serious harm to an inmate's health or safety. *Id.* at 834. That is, the official must know of and disregard an excessive risk to inmate health or safety. *Id.* at 837. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence; and a factfinder may conclude that a prison official knew of a substantial risk, that is he drew the inference of risk, from the very fact that the risk was obvious. *Id.* at 842. Under the *Farmer* standard, a person is liable "if he knows that inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847.

2. **Relevant Facts and Argument**

    a. **Defendant Myron Riser Was Subjectively Aware of the Substantial Risk of Harm Posed to Plaintiff Due to His Disability**

It is undisputed that Defendant Myron Riser was aware of Plaintiff's seizure disorder when completing Plaintiff's "Initial Custody Assessment Scale" form. During the intake process, Defendant Myron Riser became aware of Plaintiff's medical condition because Plaintiff told him that he suffers from

epilepsy and that he experienced multiple seizures on the date of his arrest that caused him to black out and cause a multi-vehicle accident. To that resolve, Officer Riser indicated Plaintiff was "disabled" and suffered from "seizures" on the "Inmate Needs Assessment" form. (EFC No. 48-19.)

The substantial risk of serious harm to Plaintiff by housing him in a maximum-security facility was obvious to Officer Riser, as the nature of Plaintiff's medical condition causes him to become unconscious, making him especially vulnerable to assault by other inmates whenever experiencing a seizure. This is especially true because Harris County is widely known to have a high rate of inmate sexual violence. The risk of Plaintiff becoming a target for attacks was obvious and known to Officer Riser, based on his experience working at HCJ and dealing with inmate security classifications.

Given Plaintiff's known seizure disorder and recent seizures, a jury could find that placing Plaintiff in "Maximum Custody" obviously exposed Plaintiff to a substantial risk of serious harm; thus, Plaintiff has established sufficient facts that Myron Riser knew of and disregarded "an excessive risk to inmate health or safety." *Farmer,* 511 U.S. at 537.

### b. There is Proximate Cause Between Breach of Myron Riser's Duties and Plaintiff's Injuries

Proximate cause is generally held to be a question of fact for determination by the fact finder, unless the facts are undisputed. *Cruise v. Monington*, 558 F. Supp. 2d 707, 710 (E.D. Tex. 2007). The facts here are disputed. Foreseeability is the leading test to determine proximate cause. It is well-settled that what is required to be foreseeable is the general character of the event or harm-[e.g. facing a substantial risk of serious harm as an inmate with a seizure disorder in a high security facility] not its precise nature or manner of occurrence. *Union Pac. R.R. Co. v. Williams*, 85 S.W.3d 162 (Tex. 2002). Defendant Myron Riser failed to adequately account for Plaintiff's medical condition when recommending Plaintiff be placed in maximum custody. Defendant Myron Riser knew Plaintiff had a seizure disorder and suffered multiple seizures on the date of his arrest. In light of said knowledge, a jury could reasonably conclude it was foreseeable that Plaintiff might experience another seizure and be

attacked while unconscious. As such, triable issues exist whether Defendant's failures to protect Plaintiff's safety and provide Plaintiff adequate medical care were proximate causes of his injuries. Where conflicting inferences may be drawn from the facts, the case must go to the jury. *Celotex,* 477 U.S. at 317.

### c. Plaintiff Suffered Damages as a Result of Defendant Myron Riser's Deliberate Indifference to Plaintiff's Eighth Amendment Rights

Shortly after Defendant Myron Riser assigned Plaintiff to maximum custody, about a dozen inmates assaulted Plaintiff. During the assault, Plaintiff suffered another seizure. While Plaintiff was unconscious and suffering from that additional seizure, an inmate, known as "T", sexually assaulted Plaintiff. As a result of the inmate assaults, Plaintiff suffers severe emotional trauma and mental anguish.

### C. Plaintiff's Claim Against Francis McIntyre for Excessive Force Presents a Genuine Issue of Material Fact

#### 1. Applicable Law

In deciding whether the force deliberately used is, constitutionally speaking, "excessive," a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable. *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2472 (2015). Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: 1) the relationship between the need for the use of force and the amount of force used; 2) the extent of the plaintiff's injury; 3) any effort made by the officer to temper or to limit the amount of force; 4) the severity of the security problem at issue; 5) the threat reasonably perceived by the officer; and 6) whether the plaintiff was actively resisting. *Id* at 2473. This list is not exclusive; said factors only illustrate the types of objective circumstances potentially relevant to a determination of excessive force. *Id*. Hence, whether a pretrial detainee is disabled may also bear on the reasonableness or unreasonableness of the force used.

#### 2. Relevant Facts & Argument

After the inmate assault against Plaintiff, Officer McIntyre escorted Plaintiff, whom he knew suffered a seizure disorder, to the elevator. The trauma and stress from the inmate assault caused Plaintiff to suffer another seizure in the elevator. When Plaintiff leaned toward Officer McIntyre for help, Officer

McIntyre purposely moved, causing Plaintiff to fall against the wall and floor of the elevator. Then, Officer Francis McIntyre used excessive force against Plaintiff, by grabbing Plaintiff around his neck, placing his forearm into Plaintiff's throat and slamming Plaintiff against the wall of the elevator, causing further injuries to Plaintiff. Afterwards, Officer McIntyre told Plaintiff, "Never put your fucking hands of me again."

Defendants erroneously assert that the claims against Officer McIntyre should be dismissed because he entered Plaintiff's cell and stopped the inmate altercation. Said assertion is intrinsically flawed, as Officer McIntyre's liability turns on whether he used excessive force, not whether he stopped an altercation.

Viewed in the light most favorable to the Plaintiff, the evidence can support a jury finding of excessive force in violation of Plaintiff's clearly established rights under the Fourteenth Amendment's Due Process Clause. *See Cowart v. Erwin*, 837 F.3d 444, 454-55 (5th Cir. 2016)(holding "in 2009. . . it was well-established . . . that officers may not "use gratuitous force against a prisoner who has already been subdued . . . [or] incapacitated.")

### D. Defendants Myron Riser and Francis McIntyre Are Not Entitled to Qualified Immunity

#### 1. Applicable Law

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Behrens v. Pelletier*, 516 U.S. 299, 306 (1996) [describing *Harlow's* standard as "objective legal reasonableness"]. The qualified immunity inquiry involves two elements: (1) whether the law governing the state official's conduct was clearly established; and (2) whether under that law could a reasonable state official have believed his conduct was lawful. *Jeffers v. Gomez*, 267 F.3d 895 (5th Cir. 2001). A public official is not entitled to qualified immunity when the contours of the allegedly violated right were sufficiently clear that a reasonable official would understand that what he was doing violated that right. *Id.* Additionally, when conducting the qualified

immunity analysis, all reasonable inferences must be drawn, and all disputes of fact and credibility are resolved in Plaintiff's favor under the summary judgment standard. *Tolan v. Cotton*, 134 S. Ct. 1861 (2014).

### 2. Relevant Facts & Argument

The U.S. Supreme Court has recognized the right to reasonably safe conditions of confinement as a "historic liberty interest" protected substantively by the Due Process Clause of the Fourteenth Amendment. *Youngberg v. Romeo*, 457 U.S. 307, 315 (1982). And that right is not extinguished by lawful confinement, even for penal purposes. *Id.* Additionally, the Supreme Court has recognized an Eighth Amendment duty on the part of prison officials to protect prisoners from violence at the hands of other prisoners, as well as an Eighth Amendment duty to provide adequate medical care to persons in the custody of prison officials. *Farmer*, 511 U.S. at 833;  *Estelle*, 420 U.S. at 102. Moreover, the Supreme Court has recognized inmates' rights to be free from excessive force under the Fourteenth Amendment's Due Process Clause. *Kingsley*, 135 S.Ct. at 2472.

Defendant Myron Riser is not entitled to qualified immunity for Plaintiff's Eighth Amendment claims, because any and all objectively reasonable peace officers would know that Plaintiff's vulnerable state (i.e. Plaintiff's seizure disorder and recent suffering from multiple seizures) required Defendant Myron Riser to indicate "Special Management Concerns" when completing Plaintiff's Inmate Needs Assessment form. *See Kovalchik v. Wagner*, Civil Action No. 08-507, 2010 U.S. Dist. LEXIS 99620, at *45-46 (D.N.J. Sep. 21, 2010) (failure to properly classify and supervise inmates violated a "clearly established" constitutional right of not being assaulted while incarcerated); *see also Austin v. Hill*, No. 11-2847, 2014 U.S. Dist. LEXIS 48872, at *20 (E.D. Pa. Apr. 8, 2014). Defendant Francis McIntyre is not entitled to qualified immunity for Plaintiff's excessive force claim, because any and all objectively reasonable peace officers would know that Plaintiff's light and cautious attempt to touch was merely to steady himself in response to a serious medical condition, and that Plaintiff did not present a threat of any kind to anyone. *Cowart v. Erwin*, 837 F.3d 444, 454-55 (5th Cir. 2016).

**E.** **Plaintiff Has Established Municipal Liability Claims Against Harris County Based on Policies and Customs Regarding Conditions of Confinement and Failure to Supervise and on Episodic Acts and Omissions with Policymaker Deliberate Indifference**

### 1. Applicable Law

To impose liability on Harris County, Plaintiff must show that there was either an official policy or an unofficial custom, adopted by the County, that was the moving force behind the claimed constitutional violation. *Duvall v. Dall Cnty.,Tex.*, 631 F.3d 204, 209 (5th Cir. 2011). A "policy or custom" is either (1) a policy statement or rule that is officially promulgated by the county's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or (2) a persistent, widespread practice of county officials or employees, which is so common and well settled as to constitute a custom that fairly represents county policy. *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (*en banc*). Actual or constructive knowledge of the custom must be attributable to the county's governing body or to the official to whom policy-making authority has been delegated. *Id.*

Plaintiff may also hold County liable for an individual or episodic act by establishing a "municipal employee's subjective indifference and additionally that the municipal employee's act 'resulted from a municipal policy or custom adopted or maintained with objective deliberate indifference to the [plaintiff]'s constitutional rights.'" *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 526 (5th Cir. 1999); *Hare v. City of Corinth,* 74 F.3d 633, 64 (5th Cir.1996); *see also Hill v. Marshall*, 962 F.2d 1209, 1213 (6th Cir. 1992) (finding supervisor liability where plaintiff alleged that supervisor abandoned the specific duties of his position—reviewing and responding to inmate medical complaints).

### 2. Relevant Facts and Argument

As discussed above, County was aware of the high occurrence of inmate-on-inmate sexual assault in its jail and that an inmate with a seizure disorder would not be able to protect himself if he were to suffer a seizure rendering him unconscious. Both Myron Riser and Nurse Joseph Nwabueze deliberately chose to disregard Plaintiff's disability and chose not to afford him reasonable housing accommodations. This was possible, in part, because County's policies/customs in respects to physically and

developmentally disabled inmates did not require that housing accommodations be given to inmates who suffer from multiple seizures or seizure disorders.

Furthermore, more discovery should be allowed for Plaintiff to prove his *Monell* claim against Detention Officer Myron Riser's supervisor. As discussed above, Officer Riser's supervisor did not review Detention Officer Myron Riser's inmate classification and essentially abandoned his supervisory duties. If the supervisor, reviewed Officer Myron Riser's inmate classification form, he would have observed that the classification was incorrect and prevented Plaintiff from being placed in the maximum security of the HCJ. For these reasons, Plaintiff has sufficient evidence to prove his *Monell* claim based on supervisor liability.

## IV.    CONCLUSION

For the aforementioned reasons, Plaintiff requests that Defendants' Motion for Summary Judgment be denied pursuant to Federal Rule of Civil Procedure 56(d), as there is genuine dispute as to several material facts concerning Plaintiff's ADA, RA, and Fourteenth and Eighth Amendment Claims.

*/s/ Nikeyla Johnson*
_____
Nikeyla Johnson
Texas State Bar No. 24065505
Southern District ID No. 981963
3033 Chimney Rock Rd., Suite 610,
Houston, Texas 77056
(832) 289-7614 direct
(888) 819-5612 facsimile
njohnson@contactjohnsonlawfirm.com
Attorney-In-Charge for Plaintiff John Doe

## CERTIFICATE OF SERVICE

On June 29, 2020, a true and correct copy of the foregoing instrument was submitted to the United States District Court for the Southern District of Texas using the electronic case filing system (CM/ECF system). I hereby certify that I have served all counsel of record electronically which is authorized by Federal Rule of Civil Procedure 5(b)(2):

**Attorneys for Defendants Harris County And Defendants Myron Riser, Francis McIntyre, Cody Hickman & M. Watkins**
Barbara A. Callistien, Attorney-In-Charge
Cameron A. Hatzel
1019 Congress, 15th Floor
Houston, Texas 77002

**Attorneys for Defendants Albert Munoz, Chadrick O'Bryant & Terrence Bullard**
Mary E. Baker, Attorney-In-Charge
1019 Congress, 15th Floor
Houston, Texas 77002

*/s/ Nikeyla Johnson*
_____
Nikeyla Johnson